IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| PATRICE D. S.-R., | ) |
|---|---|
| Plaintiff, | ) |
| v. | ) Case No. 17-CV-518-JFJ |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Plaintiff Patrice D. S.-R. seeks judicial review of the decision of the Commissioner of the Social Security Administration denying her claim for disability insurance benefits under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i) and 423. In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge. For reasons explained below, the Court affirms the Commissioner's decision denying benefits. Any appeal of this decision will be directly to the Tenth Circuit Court of Appeals.

**I.      Standard of Review**

In reviewing a decision of the Commissioner, the Court is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citing *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994)). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004). The Court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the

substantiality test has been met." *Grogan*, 399 F.3d at 1261 (citing *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994)). The Court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *See Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if the Court might have reached a different conclusion, the Commissioner's decision stands so long as it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II.   Procedural History and ALJ's Decision

Plaintiff, then a 54-year-old female, protectively applied for Title II benefits on April 23, 2014, alleging a disability onset date of April 1, 2014. R. 228-231. Plaintiff met the insured status requirements of the Act through September 30, 2018. R. 19, 21. Plaintiff listed the conditions preventing her from working as "neck, shoulders, headaches, PTSD, depression, high blood pressure, diabetic, left arm goes numb, left knee, back, [and] mild heart attack." R. 262. Plaintiff's claim for benefits was denied initially on July 24, 2014, and on reconsideration on November 20, 2014. R. 115-119; 125-127. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), and the ALJ held the hearing on June 7, 2016. R. 43-83. The ALJ issued a decision on June 17, 2016, finding at step five that Plaintiff was not disabled because she could perform other work. R. 37-38.

The hearing focused primarily on Plaintiff's work history following her alleged onset date and her mental impairments. R. 48-67. With respect to physical impairments, the ALJ asked Plaintiff if her diabetes and blood pressure had at times been out of control, and Plaintiff admitted she was not on insulin despite doctors' advice. R. 69. Plaintiff was then taking Janumet and Metaformin for diabetes and Gabapentin for neuropathy, which Plaintiff described as the pain accompanying her diabetes. R. 71. When asked about this pain, the ALJ inquired if the medication

helped. Plaintiff said it does help if she takes it three to four times a day, as prescribed by her doctors at Morton Health Clinic. R. 71-72.

At the conclusion of the hearing, Plaintiffs' counsel and the ALJ discussed the opinion of mental consultative examiner Dr. Barton that Plaintiff may have difficulty adapting to the demands of a work environment, but that this difficulty was due more to physical pain than mental health conditions. R. 80. After the ALJ commented that physical pain was outside Dr. Barton's expertise, counsel said "then maybe we need to look into the physical part of this case" and mentioned the lack of any "consultative examination of her physical." R. 81. They had the following exchange, which forecasts certain issues raised in this appeal:

> ALJ: Actually, I said no exertional limit actions [in hypothetical to vocational expert ("VE")].
> Atty: Well, I know but then you were asking for medium jobs because if it was –
> ALJ: Because if she's limited to light then she's disabled under the grids.
> Atty: I know, and that's why you need – then if you believe that, that's fine. I'm okay with that. But if you don't believe it, then we need to see – have a doctor look at her and –
> ALJ: She's had doctors look at her. She's been to OSU. She's been to Morton Clinic.
> Atty: Well . . . they don't give us RFCs.
> ALJ: No but they give us physical examinations.
> Atty: Well, okay. And I don't see that those show that she could do – lift 50 pounds.
> ALJ: Okay. That's your understanding of what the medical record is. That's fine. But I don't believe we need to get a consultative examination. I believe there's sufficient evidence under the regulations to form an opinion as to her disability.
> Atty: Well, if it's 50 pounds, if it's medium work, there isn't and the absence of evidence is not evidence . . . .
> …
> Atty: You have a duty to develop the claim if . . . it comes down to such a sharp answer one way or the other as to whether or not she – light she grids out, medium she doesn't, then that's something that needs to be developed.

R. 81-82.

In her written decision, the ALJ found that Plaintiff met the insured status requirements of the Act through September 30, 2018, and that while she had worked after her date of alleged disability onset, the work did not rise to the level of substantial gainful activity. R. 21. At step two,

3

the ALJ found that Plaintiff's major depressive disorder, post-traumatic stress disorder, and alcohol abuse were all severe impairments but that Plaintiff's diabetes mellitus, hypertension and neuropathy were non-severe. At step three, the ALJ found Plaintiff's impairments did not meet or medically equal any listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ specifically discussed listing 12.04 (affective mood disorders), listing 12.06 (anxiety-related disorders), and listing 12.09 (substance addiction disorders), finding that Plaintiff had moderate difficulties in activities of daily living, social functioning, and concentration, persistence, or pace; and no episodes of decompensation. R. 22.

The ALJ found the following residual functional capacity ("RFC"):

> [T]o perform a full range of work at all exertional levels but with the following nonexertional limitations: She can understand, remember and carry out simple instructions, can make simple decisions, and can relate to supervisors and peers on a superficial work basis, but cannot interact with the general public. She can adapt to a work situation but would need more forewarning of changes in task demands than other workers.

R. 23. In support of the RFC, the ALJ engaged in a lengthy and thorough discussion of the claimant's testimony regarding her mental and physical symptoms; work history following Plaintiff's alleged onset date; treating physicians' medical records; and the mental consultative examination ("CE") of Dr. Barton. R. 23-36. The ALJ then conducted a credibility analysis, explained what weight she gave each medical opinion, and examined the third-party function report of Plaintiff's husband. R. 33-36.

At step four, the ALJ found Plaintiff could not perform her past relevant work. R. 36. At step five, based on the hypothetical posed to the VE and her responses, the ALJ found Plaintiff could perform the requirements of representative occupations such as janitor, unskilled (SVP-2), medium exertion; laundry workers, unskilled (SVP-2), medium exertion; machine packager, unskilled (SVP-2), medium exertion. R. 37.

**III.    Issues and Analysis**

The Court construes Plaintiff's appeal as raising three allegations of error: (1) the ALJ's physical RFC permitting a range of work at all exertional levels is not supported by substantial evidence, because the effects of Plaintiff's diabetes, hypertension, and neuropathy were severe and limited Plaintiff's ability to work; (2) the ALJ's mental RFC is not supported by substantial evidence, because more severe limitations should have been imposed in light of Dr. Barton's opinion; and (3) the ALJ failed to fully develop the record by failing to obtain a physical CE pursuant to counsel's request during the hearing.

**A.    Plaintiff's Physical RFC is Supported by Substantial Evidence**

At step two, the ALJ found Plaintiff's "alleged impairments related to diabetes mellitus, hypertension and neuropathy" were not severe, because "the medical evidence of record" did not "substantiate the severity of those conditions." R. 21. The ALJ stated that "[f]urther evaluation of those impairments is below." *Id.* The ALJ made clear that, although she found these physical impairments non-severe, she nonetheless "considered their impact in determining [Plaintiff's RFC]." *Id.* Plaintiff argues that the ALJ's finding of non-severity at step two, and the corresponding finding of no physical exertional limitations in the RFC, are not supported by substantial evidence. Specifically, Plaintiff contends that Plaintiff's "physical impairments of neuropathy, fatigue, and pain render her deficient in the functional areas of walking, standing, sitting, lifting, pushing, pulling, etc. due to the fact that she is not able to perform those requirements for an 8 hour workday." ECF No. 13 at 8.

As an initial matter, to the extent Plaintiff asserts a step-two error, the Court concludes that any error was harmless because the ALJ found three other severe impairments and proceeded to the remaining steps of the sequential analysis. *See Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016) ("As long as the ALJ finds one severe impairment, the ALJ may not deny benefits at step two

but must proceed to the next step. Thus, the failure to find a particular impairment severe at step two is not reversible error when the ALJ finds that at least one other impairment is severe."). In this case, the crucial question is whether Plaintiff's physical RFC, which does not include physical exertional limitations, is supported by substantial evidence.

The Court concludes that the ALJ's physical RFC is supported by substantial evidence for three reasons. First, the RFC is supported by the medical opinions in the record. In finding the physical impairments non-severe/not resulting in any physical exertional limitations, the ALJ gave "great weight" to two agency physicians' opinions. R. 34 (citing opinions of Dr. Holly, dated July 21, 2014, and Dr. Woodcock, dated November 19, 2014, finding physical impairments "non-severe" upon review of Plaintiff's medical records). Dr. Holly found Plaintiff's physical impairments non-severe, noting that "[t]he severity of sx alleged is not entirely supported by the evidence in the file" and that Plaintiff "would likely feel better with improved glycemia control." R. 89. On reconsideration, Plaintiff reported her back was worse and that she had neuropathy in her right arm, shoulder, and feet. R. 106. After considering the new complaints and one new medical record, Dr. Woodcock also found Plaintiff's physical impairments non-severe. R. 105. The agency reviewers considered Plaintiff's medical records, including those discussing Plaintiff's complaints of numbness and pain. The ALJ found the agency doctors' opinions consistent with the totality of the medical evidence during the period of alleged disability and explained her reasons for doing so. R. 34. Affording great weight to an agency reviewer's opinion is wholly permissible under the regulations. *See* 20 C.F.R. § 404.1513a(b)(1) (providing that ALJs "are not required to adopt any prior administrative medical findings but they must consider this evidence according to §§ 404.1520b, 404.1520c, and 404.1527, as appropriate, because our Federal or State agency medical or psychological consultants are highly qualified and experts in Social Security disability evaluation").

Second, the RFC is supported by the ALJ's conclusion that Plaintiff's medications were effective in controlling Plaintiff's impairments but that Plaintiff was often non-compliant:

> The claimant has been prescribed and has taken appropriate medications for her alleged impairments, which weighs in the claimant's favor, but the medical records reveal that the medications have been relatively effective, when taken as prescribed . . . . However, as has been discussed above, there are many more instances of noncompliance, as related to her medications and treatment, rather than compliance.

R. 34. The ALJ found that the record contained "many references to noncompliance and her being out [of] her medications for months at a time." R. 32. Such references include but are not limited to records indicating Plaintiff was in denial about diabetes and refusing insulin, R. 490; Plaintiff declining to monitor her blood sugar or blood pressure at home, R. 495; Plaintiff being described by a physician as a "terribly non-compliant" diabetic, R. 518; and Plaintiff failing to fill prescriptions for a six-month period, R. 536-538. In discussing December 1, 2015, medical records from Family and Children's Services, the ALJ noted Plaintiff's statement that she had been unable to fill medications. The ALJ commented, however, that Plaintiff "was linked to prescription resources, such as Wal-Mart's four-dollar prescription list, Tulsa County Pharmacy, Helping Hands, Tulsa County Social Services, Genscripts, and prescription assistance." R. 33. In addition, the ALJ explained the claimant "was assisted by showing her each location where she could fill her medications." *Id*. The ALJ reasonably concluded that Plaintiff's pain and neuropathy did not result in functional limitations, when Plaintiff was taking medication and complied with treatment.[1]

---

[1] Plaintiff did not challenge the ALJ's credibility assessment or raise the issue of whether the ALJ had an obligation to consider and/or properly considered the four factors identified in *Frey v. Bowen*, 816 F.2d 508, 517 (10th Cir. 1987). The Court will not act as Plaintiff's advocate or develop grounds for reversal not urged by Plaintiff in the first instance. In any event, the ALJ's discussion was sufficient, because she extensively discussed Plaintiff being prescribed medications and treatment regimens, Plaintiff's non-compliance, and Plaintiff's lack of justification for non-compliance. *See Lee v. Berryhill*, 690 F. App'x 589, 592 (10th Cir. 2017) (failure to expressly cite *Frey* decision/factors not reversible error where ALJ discussed evidence relevant to first and fourth factors).

Third, in assessing Plaintiff's functional limitations flowing from her neuropathy and other conditions, the ALJ also considered Plaintiff's extensive work history after the alleged onset date, discussing in detail the jobs Plaintiff performed from April of 2014, to March of 2016. R. 25. The ALJ also noted Plaintiff's testimony that she "could live independently, care for her own personal hygiene, prepare her own simple meals, clean, and shop for her own needs, as well as drive." R. 27.

In sum, the ALJ's physical RFC was based on and supported by: (1) the agency reviewers' opinions that the alleged physical impairments were non-severe; (2) Plaintiff's ability to control her pain from neuropathy with her prescribed medications, which she had access to via the prescription services listed by the ALJ and described to her by physicians; (3) the fact that the vast majority Plaintiff's alleged complaints stemmed from non-compliance with diabetes and neuropathy treatment prescribed by several treating physicians; (4) Plaintiff's extensive work history following her alleged onset date; and (5) Plaintiff's ability to live independently, drive, and care for her needs. The ALJ's reasoning is consistent with and supported by the record.

In urging reversal, Plaintiff focuses on a May 8, 2014, visit to Dr. Kelley Joy, during which Plaintiff presented with "moderate neuropathy" and scored "+2 [out of 5] all over" on a motor strength test. R. 390-91. However, the ALJ considered and discussed this medical record. R. 26. The ALJ noted that, during this visit, Plaintiff "admitted she discontinued use of Metformin" and that Plaintiff was in denial about her diagnosis of diabetes. R. 26. Further, the Court cannot conclude that this single motor strength test "overwhelms" other evidence in the record, such that the RFC assessment is not supported by substantial evidence. *See Hamlin*, 365 F.3d at 1214 ("A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record . . . ."). Plaintiff also appears to make an equitable argument that the ALJ manipulated her findings to deny benefits, stating that the "ALJ . . . knew that because of the Plaintiff's age she could only deny [benefits] by finding that the Plaintiff's physical impairments were non-severe because it was

8

unlikely that the Plaintiff could perform medium work." ECF No. 16 at 2. The ALJ conducted a lengthy hearing, wrote a thorough decision supported by substantial evidence, and the Court will not presume the ALJ crafted an RFC designed to ensure Plaintiff would be denied benefits.

### B. Plaintiff's Mental RFC is Supported by Substantial Evidence

Plaintiff contends the "simple work" limitation in the RFC is not supported by substantial evidence and should have been "more severe," because Dr. Barton included the words "guarded prognosis" in her mental CE report. ECF No. 13 at 11. Plaintiff devotes one paragraph to this argument.

The Court concludes that the mental RCF is clearly supported by substantial evidence. In imposing a simple work limitation, rather than any greater limitation, the ALJ gave great weight to the state agency physicians' opinions that Plaintiff could perform simple tasks, with routine supervision, relating to supervisors or peers on a superficial work basis, with inability to relate to the general public. R. 34. The ALJ adopted into the mental RFC the agency reviewers' opinions that Plaintiff may need more forewarning of changes in demands than other workers. *Id.* In contrast, the ALJ gave little weight to the opinion of Dr. Barton, because Dr. Barton "based her evaluation [of mental limitations] on physical pain, which is beyond her scope of expertise" and "based entirely on the claimant's subjective allegations." *Id.* The Court finds this to be a permissible weighing of the medical evidence, and the ALJ fully explained her reasoning. *See Branum v. Barnhart*, 385 F.3d 1268, 1275 (10th Cir. 2004) (explaining that ALJ "may consider whether or not the physician is a specialist in the area upon which an opinion is rendered"). Plaintiff's cursory argument premised on Dr. Barton's "guarded prognosis" language fails because the ALJ permissibly gave little weight to Dr. Barton's opinion, and a "guarded prognosis" is not a specific work-related limitation. Even if Dr. Barton's assessment could have supported a finding of greater mental restrictions, the issue for judicial review is whether the ALJ's decision is supported by substantial evidence, not whether

Plaintiff's position is supported by substantial evidence. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); 42 U.S.C. § 405(g).

> C. **ALJ Did Not Err By Failing to Obtain CE**

"The ALJ has a basic obligation in every social security case to ensure that an adequate record is developed during the disability hearing consistent with the issues raised." *Cowan v. Astrue*, 552 F.3d 1182, 1187 (10th Cir. 2008) (quoting *Henrie v. U.S. Dep't of Health & Human Servs.*, 13 F.3d 359, 360–61 (10th Cir.1993)). "This is true despite the presence of counsel, although the duty is heightened when the claimant is unrepresented." *Id.* "The duty is one of inquiry, ensuring that the ALJ is informed about facts relevant to his decision and learns the claimant's own version of those facts." The ALJ "does not have to exhaust every possible line of inquiry in an attempt to pursue every potential line of questioning;" instead, the "standard is one of reasonable good judgment." *Hawkins v. Chater*, 113 F.3d 1162, 1168 (10th Cir. 1997).

An ALJ may elect to develop the record by obtaining a CE. *See* 20 C.F.R. § 404.1519a (explaining that "[w]e may purchase a [CE] to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow us to make a determination or decision on your claim" and providing examples of instances that may require a CE); 20 C.F.R. § 404.1512(b)(2) ("Generally, we will not request a [CE] until we have made every reasonable effort to obtain evidence from your own medical sources."). A CE "is often required" where (1) there is a direct conflict in the medical evidence requiring resolution, (2) the medical evidence in the record is inconclusive, or (3) additional tests are required to explain a diagnosis already contained in the record. *Hawkins*, 113 F.3d at 1166. The Tenth Circuit has held that an "ALJ should order a [CE] when evidence in the record establishes the reasonable possibility of the existence of a disability and the result of the [CE] could reasonably be expected to be of material assistance in resolving the

issue of disability." *Id.* at 1169. Generally, an ALJ has "broad latitude in ordering consultative examinations." *Id.* at 1166.

The Court finds the ALJ did not commit error by failing to obtain a physical CE to assess Plaintiff's pain and physical limitations flowing from her neuropathy. The single muscle strength test cited by Plaintiff, among the numerous medical records supporting the RFC discussed above, does not constitute the type of material inconsistency that necessitates a CE. Nor are the medical records incomplete or inconclusive, as noted by the ALJ herself during her exchange with counsel during the hearing. R. 81-82. Contrary to Plaintiff's arguments, the ALJ did not need a specific "RFC" opinion from a CE or other medical professional to assess Plaintiff's functional limitations. *See Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) (explaining that "there is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question"); *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004) ("The ALJ, not a physician, is charged with determining a claimant's RFC."); 20 C.F.R. § 404.1527(d)(2) (explaining that, while an ALJ considers medical opinions in assessing RFC, the final responsibility for determining an RFC is reserved to the ALJ). The burden to fully develop the record was met in this case, and the ALJ had more than sufficient information to determine Plaintiff's RFC based on treatment records, agency doctors' opinions, and other non-medical evidence. *See generally Cowan*, 552 F.3d at 1187 (finding "no need" to develop record with CE because "sufficient information existed" for ALJ to make disability determination). While the physical RFC was particularly important in this case, due to Plaintiff's advanced age and the potential for her to be found disabled under a more restrictive physical RFC, this is not an adequate reason to reweigh the evidence or remand an ALJ's decision that is thorough, well-reasoned, and supported by substantial evidence.

## IV. Conclusion

The ALJ's decision finding Plaintiff not disabled is **AFFIRMED.**

**SO ORDERED** this 25th day of March, 2019.

*[signature]*
**JODI F. JAYNE, MAGISTRATE JUDGE**
**UNITED STATES DISTRICT COURT**